**Opinion issued December 10, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-23-00815-CR

————————————

**JOSE ARTURO QUINTANA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 9**
**Harris County, Texas**
**Trial Court Case No. 2442189**

---

## MEMORANDUM OPINION

A jury found Jose Arturo Quintana guilty of the misdemeanor offense of

indecent assault.[1]  The trial court assessed his punishment at confinement for one

---

[1]     *See* Act of May 24, 2019, 86th Leg., R.S., ch. 955, § 1, 2019 Tex. Gen. Laws 2768,
        2768–69 (amended 2023) (current version at TEX. PENAL CODE § 22.012).  Because
        the offense in this case was committed prior to the effective date of the amendment,

year, suspended his sentence, and placed him on community supervision for 18 months.  Quintana appeals.

In his sole issue, Quintana contends the evidence is legally insufficient to support his conviction because it fails to establish that the touching at issue, which occurred while he was rendering healthcare as a hospital employee, was without the complainant's consent.

We affirm.

## Background

At the time of the events, Quintana was working as a "patient care technician" in the emergency department of Memorial Hermann Katy Hospital.

The complainant, eighteen-year-old A.M., testified that the day after she received a meningitis vaccination she was feeling "very hazy" and "really, really dazed."  She was having difficulty walking and kept "passing out."  Her mother took her to the emergency room at Memorial Hermann.

At the hospital, A.M. was taken into the treatment area in a wheelchair.  Due to COVID-19 protections in place, her mother remained in the waiting room.

In the treatment area, Quintana, whom A.M. described as wearing blue scrubs and having gray hair and a "tribal tattoo" on his arm, wheeled A.M. to an area behind

September 1, 2023, all further references in this opinion to section 22.012 are to the former version of the statute unless otherwise indicated. *See* Act of May 26, 2023, 88th Leg., R.S., ch. 659, § 2, 2023 Tex. Gen. Laws 1611, 1611.

2

a curtain to obtain a blood sample. A.M. was wearing a sweatshirt over an athletic shirt and sports bra. Quintana or a nurse helped A.M. remove her sweatshirt and then drew the sample from her arm. A.M. also received medication for dizziness.

As Quintana later wheeled A.M. down a hallway to another area, he asked her if she wanted to put her sweatshirt back on. She stated that she did. Quintana wheeled A.M. into a room and closed the door behind them. A.M. described the room as dimly lit and having a "moving computer," a chair, and a "full IV bag."

According to A.M., while they were inside the room, Quintana lifted her shirt and sports bra and touched her breasts. She stated: "He did it with an open hand, and softly, like gently touching them but having a full hand on it and gently pulling it, if that makes sense." He then moved to the side of the wheelchair and "reached over and started touching [her] side and working his way down to [her] pants." He touched her hips and "pelvic area," and he "squeezed it." He was "in [her] pajamas, Spandex and underwear." A.M. explained that he "swooped his hand from one hip and then moved it to the other hip and grabbed that hip, too, and then went back, did the same thing to the other hip." He "just kept asking if it hurt." A.M. noted that she had not come to the hospital complaining of pain.

A.M. further testified that Quintana "went back up and started touching [her breasts] again, and then he moved from the side of the wheelchair to in front of

[her]." He said, "You're so beautiful," and tried to hug her. He then pulled down her sports bra and shirt, put her sweatshirt on, and wheeled her to the waiting room.

A.M. stated that she did not expect Quintana to touch her breasts and that, in her experience, such examinations took place while she was lying on a bed in a gown and were performed by a female nurse who explained the procedures.

A.M.'s mother testified that when A.M. returned to the waiting room, she was "scared" and "upset." On the way to the car, A.M. told her mother that she had been touched inappropriately. A.M.'s mother immediately went back into the hospital and reported what had occurred to a charge nurse and a security officer. Once at home, she reported the matter to the police.

Harris County District Attorney's Office Investigator L. Winters testified that A.M.'s medical records reflected that Quintana had attended to her during her visit to Memorial Hermann on April 6, 2022. A.M.'s chief presenting complaint was: "Had meningitis vaccine yesterday. Now have dizziness and weakness." The diagnosis on discharge was dizziness and "conversion disorder"—meaning A.M. was having hallucinations and "seeing or hearing things that [were] not there."

The trial court admitted into evidence A.M.'s medical records, Quintana's employee records, hospital surveillance video and still photographs of Quintana assisting A.M. in a hallway, and audio recordings of Investigator Winters's interviews with Quintana.

4

During an interview with Investigator Winters, Quintana stated that A.M. was "extremely lethargic" and "confused" when she came into the hospital, and she complained about pain in her neck and arm from a vaccination.

In the initial triage area, A.M. was wearing a long-sleeved sweatshirt, and it was difficult to access her arm to obtain a blood sample. A.M. stated that she wore a shirt underneath, and Quintana helped her remove her sweatshirt. After the nurse finished, she directed Quintana to move A.M. to a "results pending" area.

According to Quintana, while moving A.M. in a wheelchair down a hallway, he asked her if she wanted to put her sweatshirt back on. She said yes. Quintana explained to Investigator Winters that because A.M. was in pain and needed help, and the wheelchair impeded the narrow hallway, he wheeled her into a nearby room. He closed the door behind them and put on a pair of gloves. He described difficulty putting on A.M.'s sweatshirt because of her pain. He denied having touched A.M. as she alleged.

The jury convicted Quintana of the offense of indecent assault for having touched A.M.'s breast without her consent. Quintana now appeals.

## Sufficiency of the Evidence

In his sole issue, Quintana argues that the evidence is legally insufficient to support his conviction.

**A.** *Standard of Review*

We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, "we consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting our review, we defer to the factfinder to "fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 318–19). The jury, as the sole judge of the facts and credibility of the witnesses, may choose to believe or disbelieve any witness or portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We presume that the jury resolved any conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012).

"The key question is whether the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (internal quotations omitted). And

6

our role on appeal is "restricted to guarding against the rare occurrence when a fact finder does not act rationally." *Id.* (internal quotations omitted).

Further, in our review, we treat direct and circumstantial evidence equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

**B.** *Governing Law*

A person commits the offense of indecent assault if, "without the other person's consent and with the intent to arouse or gratify the sexual desire of any person, the person . . . touches the . . . breast . . . of another person." TEX. PENAL CODE § 22.012(a).

**C.** *Discussion*

Quintana argues that the evidence is legally insufficient "because the record does not show beyond a reasonable doubt that the touching at issue, by a technician in an emergency room, was done without consent." He argues that A.M. "broadly consented" to "reasonable and necessary medical care" when she "signed in" to the emergency room.

Quintana does not challenge the sufficiency of the evidence supporting his conviction generally or supporting the other elements of the offense—that he touched A.M.'s breast or his intent. *See id.* Accordingly, we limit our review to the

essential element of lack of consent—whether the State presented evidence that Quintana touched A.M.'s breast without her consent. *See id.*; TEX. R. APP. P. 47.1.[2]

The undisputed evidence shows that Quintana, while pushing A.M. in a wheelchair down a hallway toward a waiting area for lab results, took her into a dimly lit room and closed the door.

According to A.M., while they were alone in the room and she was seated in the wheelchair, Quintana lifted her shirt and sports bra and touched her breasts with a "full" and "open" hand, touched her hips inside her clothing, and touched her breasts again. And he told her that she was beautiful and attempted to hug her.

A.M. testified that she did not come to the hospital seeking medical treatment for pain and did not ask or expect Quintana to touch her breasts. And, in her experience, examinations of such nature ordinarily occurred while she was lying on a bed in a gown and were performed by a female nurse who communicated with her during the procedure.

---

[2] *See also English v. State*, No. 01-20-00139-CR, 2021 WL 4202159, at *3 (Tex. App.—Houston [1st Dist.] Sept. 16, 2021, no pet.) (mem. op., not designated for publication); *Ostrander v. State*, No. 14-20-00286-CR, 2021 WL 2470390, at *7 (Tex. App.—Houston [14th Dist.] June 17, 2021, pet. ref'd) (mem. op., not designated for publication) ("Because appellant has challenged the proof relating to just a single element of both offenses, we limit our review accordingly."); *see, e.g.*, *Burks v. State*, No. PD-0992-15, 2017 WL 3443982, at *1 (Tex. Crim. App. June 28, 2017) (not designated for publication) (holding that reviewing court should not address unbriefed elements in legal sufficiency challenge).

The hospital's medical record of A.M.'s visit reflects that her chief presenting complaint was: "Had meningitis vaccine yesterday. Now have dizziness and weakness." Nothing reflects that she had any complaint about, or sought any medical care for, her breasts. And there is no evidence that Quintana made any entry in her medical record regarding such an exam. Notably, the hospital's records show that Quintana was employed as a "patient care technician," providing "non-nursing" patient care. There is no evidence that he is a doctor or a nurse.

The jury, as the sole judge of the facts and credibility of the witnesses, could have reasonably chosen to credit A.M.'s testimony regarding the circumstances in which she was touched. *See Sharp*, 707 S.W.2d at 614. And a jury may infer a lack of consent from circumstantial evidence. *See Taylor v. State*, 508 S.W.2d 393, 397 (Tex. Crim. App. 1974); *Lee v. State*, 962 S.W.2d 171, 175 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd).

Here, the jury could have reasonably inferred that A.M. did not consent to Quintana, who is not a doctor or a nurse, taking her into a room, lifting her shirt and sports bra, and touching her breast. *See, e.g.*, *Flores v. State*, No. 01-20-00213-CR, 2022 WL 961554, at *9 (Tex. App.—Houston [1st Dist.] Mar. 31, 2022), *aff'd*, 679 S.W.3d 695 (Tex. Crim. App. 2023) (holding that jury could reasonably infer from circumstantial evidence that defendant acted without complainant's consent in assaulting her); *McGee v. State*, No. 04-07-00697-CR, 2009 WL 618692, at *2 (Tex.

9

App.—San Antonio Mar. 11, 2009, no pet.) (mem. op., not designated for publication) (holding that rational jury could infer from circumstances lack of consent to assaultive conduct).

Instead, the jury could have reasonably concluded that the circumstantial evidence established that the touching went beyond anything incidental or accidental that might occur while assisting with a sweatshirt and exceeded A.M.'s consent for reasonable and necessary medical care at the hospital. *See Isassi*, 330 S.W.3d at 638 (we defer to factfinder to weigh evidence and draw reasonable inferences).

Quintana further argues that, "[u]nder new Penal Code § 22.012, effective September 1, 2023, for a medical provider providing a treatment or service to be convicted of indecent assault requires an additional element be proven, that the touch was 'beyond the scope of generally accepted practices for the treatment or service,'" citing Penal Code section 22.012(b)(1)(B). He seems to suggest that the evidence is insufficient in this case because the State failed to present evidence that the touching at issue was "beyond the scope of generally accepted practices for the treatment or service." He notes that no expert testimony was presented on the issue.

In 2023, the Texas Legislature amended section 22.012(b) to elevate the offense of indecent assault from a Class A misdemeanor to a state jail felony under certain circumstances:

> (b)    An offense under this section is a Class A misdemeanor, except that the offense is:

> (1) a state jail felony if it is shown on the trial of the offense that:
>
> . . .
>
> > (B) the defendant is a health care services provider or a mental health services provider and the act is:
> >
> > > (i) committed during the course of providing a treatment or service to the victim; and
> > >
> > > (ii) beyond the scope of generally accepted practices for the treatment or service.

*See* TEX. PENAL CODE § 22.012(b)(1)(B) (current version).

Thus, the legislature authorized increasing the *degree of the offense* and, thereby, the range of punishment when committed by a health care services provider under certain circumstances. *See id.* The amendment does not, as Quintana argues, "require that an additional element be proven" in order "for a medical provider providing a treatment or service to be convicted of indecent assault" as a general principle. Rather, the element in question in subsection (b)(1)(B)(ii) must only be shown in order to elevate the offense from a Class A misdemeanor to a state jail felony. *Id.* § 22.012(b)(1)(B)(ii).

Regardless, the offense in this case occurred on April 6, 2022. Thus, the amended statute, which became effective on September 1, 2023, does not apply. Further, even if the amended statute did apply, Quintana was charged with and convicted of a Class A misdemeanor, not a state jail felony.

11

Accordingly, viewing all the evidence in the light most favorable to the jury's verdict, and based on the cumulative force of the circumstantial evidence and the reasonable inferences to be drawn, we conclude that the jury here could have reasonably found that Quintana touched A.M.'s breast without her consent. *See* TEX. PENAL CODE § 22.012(a); *see also Isassi*, 330 S.W.3d at 638. Again, Quintana does not challenge the evidence supporting the remaining elements of the offense. *See* TEX. PENAL CODE § 22.012(a). As a result, we hold that the evidence is legally sufficient to support Quintana's conviction for the offense of indecent assault.

We overrule Quintana's sole issue.

## Conclusion

We affirm the trial court's judgment.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).